O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JORGE HUMBERTO SALAZAR,<br>Defendant. | Case No. 2:26-cr-00211-MEMF-4<br>**ORDER DISMISSING INDICTMENT AGAINST DEFENDANT JORGE HUMBERTO SALAZAR WITH PREJUDICE [DKT. NO. 75]** |

Before the Court is the government's Motion to Dismiss Case Against Defendant Jorge Humberto Salazar. Dkt. No. 75 ("Motion"). For the reasons stated below, the Motion is GRANTED IN PART, and the case is DISMISSED WITH PREJUDICE.

## I. <u>Background</u>

On April 10, 2026, the Government filed a criminal Indictment against Defendant Jorge Humberto Salazar. Dkt. No. 1. Salazar is charged in the Indictment with three counts: (1) conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; (2) conspiracy to engage in the business of dealing firearms without a license, in violation of 18

U.S.C. § 371; and (3) engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), 2(a). *Id.*

On April 14, 2026, Salazar appeared before U.S. Magistrate Judge Rozella A. Oliver for an initial appearance. Dkt. No. 40. After a contested detention hearing, Judge Oliver granted Salazar pretrial release upon the posting of a $15,000 unsecured appearance bond. *Id.* The bond was executed, and Judge Oliver ordered that Salazar be released from the custody of the United States Marshals Service. Dkt. No. 43. The general conditions of release on which Salazar was granted bond include an assurance that he would "appear in person in accordance with any and all directions and orders relating to [his] appearance" in the matter. *Id.* at 5. During the post-indictment arraignment that was also held on April 14, 2026, Salazar pled not guilty to all counts as charged. Dkt. No. 48.

Despite the release order, the United States Marshals Service transferred Salazar to the custody of United States Immigration and Customs Enforcement ("ICE"). Dkt. No. 76 at 14.[1] On April 15, 2026, the Government held Salazar in ICE custody at the Adelanto ICE Processing Center, after which they transferred him to an immigration detention center in Arizona, and then to another immigration detention center in Texas. *Id.* at 15. In late April of 2026, ICE deported Salazar from the United States. *Id.* Salazar was transported 2,600 miles from the United States–Mexico border to Tapachula, Mexico, a city where he had no connections or resources. *Id.*

On May 13, 2026, the Government filed the instant Motion to Dismiss. Dkt. No. 75 ("Motion"). The Motion seeks dismissal of the Indictment *without* prejudice. *Id.* On May 15, 2026, counsel for Salazar filed an Opposition. Dkt. No. 76 ("Opp."). The Opposition argues that this Court should dismiss the case *with* prejudice. *Id.* It also requests that bond be exonerated. *Id.* at 13. The Government has filed no Reply.

---

[1] These facts are derived from Salazar's Opposition to the Motion. The Government also represents that Salazar "was arrested by Immigration and Customs Enforcement and removed from the United States." Dkt. No. 75 at 1. It does not otherwise contest the facts as Salazar outlines them, and has forfeited the opportunity to do so by failing to file a reply brief.

II. **Applicable Law**

Federal Rule of Criminal Procedure 48(a) provides that "[t]he government may, with leave of court, dismiss an indictment, information or complaint." Fed. R. Crim. P. 48(a). Any dismissal pursuant to Rule 48(a) is presumptively without prejudice. *See United States v. Brown*, 425 F.3d 681, 682 (9th Cir. 2005) ("Dismissals by the government are generally presumed to be without prejudice . . . 'unless a contrary intent is clearly expressed.'" (citations omitted)). However, where a court "specifically determine[s] that the government is operating in bad faith," a dismissal may be with prejudice. *See United States v. Hayden*, 860 F.2d 1483, 1487–88 (9th Cir. 1988); *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) ("Dismissal for a due process violation requires the government's conduct to 'be so grossly shocking and outrageous as to violate the universal sense of justice.'"). Further, a district court has discretion to dismiss the government's motion with prejudice where it is "clearly contrary to the public interest." *See United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988).

Separately, a court may dismiss an indictment under its supervisory powers. *Bundy*, 968 F.3d at 1030 ("A district court may dismiss an Indictment for government misconduct *for one of two reasons, each with its own standard: either* because it finds a serious due-process violation *or* because it concludes that dismissal is warranted under its supervisory powers. . . . Dismissal for a due-process violation requires the government's conduct to be so grossly shocking and outrageous as to violate the universal sense of justice." (citations and internal quotation marks omitted) (emphasis added)). "A district court may dismiss an Indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *Id.* But a court cannot dismiss a case pursuant to its supervisory powers "in the absence of a constitutional or statutory violation." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991).

In the immigration context, the government is granted "enforcement discretion over arrests and prosecutions." *See United States v. Texas*, 599 U.S. 670, 679 (2023). But the Ninth Circuit has held that "[i]f the government, by placing [a defendant] in immigration detention or removing him,

jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). Judges of this District have reached varying outcomes where the government was moving to dismiss a case without prejudice after deporting a defendant with a pending trial.[2]

## III. Discussion

### A. Dismissal with prejudice is appropriate.

The parties agree that the Indictment should be dismissed. But the parties disagree as to whether the dismissal should be with or without prejudice. The Government seeks dismissal of the Indictment without prejudice. Dkt. No. 75. Conversely, the Opposition argues that this Court should dismiss the case with prejudice. Dkt. No. 76. As no Reply was filed, the Government has arguably conceded to the substantive arguments presented in the Opposition.

After consideration of the parties' briefs and the factual record, this Court concludes that dismissal with prejudice is appropriate.

i. <u>By detaining and deporting Salazar while he was on bond pending trial, the Government has operated in bad faith.</u>

"[W]hen the government requests a Rule 48(a) dismissal in good faith, the district court is duty bound to honor the request." *United States v. Hayden*, 860 F.2d at 1488. "[C]onversely, Rule 48(a) empowers the district court to exercise its discretion in denying the motion when it specifically determines that the government is operating in bad faith," *id.* at 1487, and where the Motion is made based upon considerations "clearly contrary to the public interest." *United States v. Wallace*, 848

---

[2] In *United States v. Miranda-Yaxon*, No. 2:25-cr-00385-MRA (C.D. Cal. May 30, 2026) [Dkt. No. 20], the district judge dismissed the government's motion without prejudice, reasoning that "ICE's refusal to transport Defendant for his criminal court appearances does not risk a serious statutory or constitutional violation or require the Court's supervisory intervention because the government does not intend to proceed with criminal prosecution at this time." *Id.* at 3. Conversely, in *United States v. Solano-Lopez*, No. 8:25-cr-00093 (C.D. Cal. Aug. 4, 2025) [Dkt. No. 34], the district judge dismissed a criminal prosecution with prejudice, holding that "[t]he government's choice to deport Defendant, defying this Court's order releasing Defendant on bond and undermining the purpose of the parties' plea agreement, illustrates its bad faith in pursuing this action and then seeking dismissal without prejudice." *Id.* at 3.

F.2d at 1468. For the reasons below, this Court finds that the decision to redetain and deport Salazar amounts to bad faith on the Government's part.

This Court concludes that the Government's deportation of Salazar constitutes bad faith because the deportation precludes Salazar from appearing before this Court for his scheduled trial. On April 14, 2026, this Court granted Salazar's request for pretrial release on bond. Dkt. No. 40. The general conditions of release on which Salazar was granted bond include an assurance that he would "appear in person in accordance with any and all directions and orders relating to [his] appearance" in the matter. Dkt. No. 43 at 5. In addition to granting bond, this Court set a status conference date for April 30, 2026, and a jury trial date for June 8, 2026. Dkt. No. 51. However, this Court is unable to hold the status conference and the jury trial, because by late April 2026, the Government had already deported Salazar to Tapachula, Mexico. See Dkt. No. 76 at 15. There is no reason to believe that Salazar would not have appeared for all required court dates, except for that the Government removed him from this country to Tapachula while he was on bond pending trial. Put another way, it was the Government's decision—not Salazar's—that made him unavailable for trial.

The Government has not filed a Reply responding with respect to bad faith, and therefore the Court understands that the Government concedes that it acted in bad faith. The Government "jeopardizes the district court's ability to try" a defendant when it "plac[es] [him] in immigration detention or remove[s] him." *Santos-Flores*, 794 F.3d at 1091. And, when that happens, "the district court may craft an appropriate remedy." *Id.* Salazar's removal from the country prevents this Court from trying him on the charges the Government brought. Thus, given the Government's removal of Salazar from the country has jeopardized this Court's ability to try him for the charges that the Government itself had initiated, this Court has the authority to craft a remedy it deems appropriate for addressing the Government's misconduct. Thus, the Court dismisses the case with prejudice because the deportation itself constitutes the finding of bad faith that permits "the district court to craft an appropriate remedy." *Santos-Flores*, 794 F.3d at 1091.

ii. Removing Salazar while he was on bond pending trial offends Salazar's Sixth Amendment rights.

An independent basis exists for dismissal with prejudice pursuant to the Court's supervisory powers: The Government has violated Salazar's constitutional rights to counsel and a speedy trial.

"The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."" *Texas v. Cobb*, 532 U.S. 162, 167 (2001). Further, it guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI; *see also Barker v. Wingo*, 407 U.S. 514, 519 (1972).

This Court finds that the Government's deportation of Salazar violated his Sixth Amendment right to counsel. As the Opposition notes, Salazar's deportation interferes with his ability to seek and communicate with counsel, as he now resides in another country with limited, if any, monetary resources and connections. *See* Dkt. No. 76 at 15. The Government might contend that Salazar's Sixth Amendment right to counsel is not violated because Salazar no longer needs counsel if the Government is moving to dismiss the criminal charges brought against him. However, the Government's deportation of Salazar violates his Sixth Amendment right to counsel because, until this Court rules on the Government's motion to dismiss, there remains a pending criminal case against Salazar that entitles him to legal representation. Therefore, as an additional and independent reason under this Court's supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct," this Court finds that dismissal with prejudice is warranted here as a remedy for the Government's violation of Salazar's Sixth Amendment right to counsel. *See Bundy*, 968 F.3d at 1031.

Separately, this Court finds that the Government's deportation of Salazar violated his Sixth Amendment right to a speedy trial. The Government's removal of Salazar to a country where he has limited resources and connections, Dkt. No. 76 at 15, undermines Salazar's ability to be present before this Court for his pending trial. The Government has not proffered a means by which Salazar could reenter the United States for his trial, nor has it stated that the Government would assist Salazar in returning for his trial.

Having not filed a Reply, the Government appears to have conceded these points. Therefore, this Court finds that dismissal with prejudice is warranted here as a remedy for the Government's violation of Salazar's Sixth Amendment right to a speedy trial.

iii. Removing Salazar while he was on bond pending trial offends Salazar's Fifth Amendment due process rights.

"Dismissal for a due process violation requires the government's conduct to 'be so grossly shocking and outrageous as to violate the universal sense of justice.'" *Bundy*, 968 F.3d at 1030.

In *Benlakhlef*, this Court reasoned that "to prioritize [defendant's] deportation over proceeding with the prosecution that the government itself started, while insisting that the prosecution remain hanging over [him] for an indeterminate period of time, demonstrates a willingness to violate the universal sense of justice." *See United States v. Benlakhlef*, No. 2:25-mj-06327, (C.D. Cal. Mar. 25, 2026) [Dkt. No. 23]. So too here. In this matter, the Government's decision to deport Salazar instead of proceeding with the prosecution the Government had initiated, while simultaneously insisting that the prospect of prosecution remain hanging over Salazar for an indeterminate period of time, is "so grossly shocking and outrageous as to violate the universal sense of justice." *Bundy*, 968 F.3d at 1030.

By not filing a Reply, the Government has arguably conceded to this violation of Salazar's due process rights as argued in his Opposition. Thus, this Court dismisses the Government's case with prejudice on the independent basis that the Government's willingness to violate the universal sense of justice violates Salazar's Fifth Amendment right to due process.

**B. The bond is exonerated.**

There appears to be no dispute that the bond for Salazar should be exonerated. Fed. R. Crim. P. 46(f); *see also* Motion at 2; Opp. at 13.

/ / /

## IV. **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion to Dismiss is GRANTED IN PART.
2. The Indictment is DISMISSED WITH PREJUDICE.
3. All trial dates and deadlines are VACATED.
4. All relevant bonds in this matter are EXONERATED.

IT IS SO ORDERED.

Dated: September 18, 2026

HON. MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

cc. USPO/PSA, USM, BOP